## WILKES *et al. v.* PHILLIPS *et al.*

Equitable relief will not be granted at the instance of those who have been guilty of gross laches. Therefore it was proper to dismiss, on demurrer, an equitable petition for the cancellation of a deed on the ground that it was fraudulently procured, and for other equitable relief, when it appeared that the alleged fraud was practiced more than forty-six years, and the right of action, if any, accrued more than forty-one years, before the petition was filed, that the parties to the deed had long since been dead when the suit was brought, and no excuse whatever was given for the long delay.

Submitted June 23,—Decided July 14, 1904.

Equitable petition.    Before Judge Mitchell.    Brooks superior court.    November 5, 1903.

*L. W. Branch,* for plaintiffs.

FISH, P. J.    On March 26, 1903, an equitable petition was brought to cancel a warranty deed to certain land, made by Mrs. Frances A. Griffin to Joseph B. Griffin, September 11, 1856, reciting a consideration of eight hundred dollars, and recorded January 6, 1860, and for other relief.    The petition alleged, in brief: That plaintiffs were heirs at law of Mrs. Frances A. Griffin, who died in 1861, intestate, owing no debts; that the defendants were the heirs at law of Joseph B. Griffin, who was a son and heir at law of Frances A. Griffin; that "Mrs. Frances A. Griffin was of weak, imbecile mind, not being mentally capable of making a contract or of transacting any business, which fact was well known to the said Joseph B. Griffin, who "took advantage of the imbecility of the said Mrs. Frances A. Griffin and by the exercise of undue influence over the enfeebled and benighted mind of the said Mrs. Frances A. Griffin induced her to execute the above-mentioned deed, to the injury of . . petitioners; that the said Joseph B. Griffin absolutely failed to give any consideration for the said land, but having given his notes for the purchase-price, he did, before their liquidation, obtain the same and destroy them;" that upon the death of Mrs. Frances A. Griffin, Joseph B. went into possession of the land under such deed, and had held the same exclusively and adversely to the rights of petitioners to the time of his death, and that since his death the defendants had held possession of the land adversely to petitioners; that defendants had sold the turpentine privileges on the land to one Clyatt, who

had worked the same for three years.　The prayers were: for a surrender and cancellation of the deed, as a cloud upon the title of petitioners; that petitioners recover mesne profits and the value of their interests in the turpentine privilege sold to Clyatt; for a recovery of their interests in the land; that the land be divided among petitioners and defendants, according to their several interests therein; that the interests of the defendants be charged with the payment to petitioners of the "mesne profits and waste," or that the land be sold for the purpose of partition; and for general relief.　The petition was dismissed on demurrer, and the petitioners excepted.

Our opinion is that the dismissal was proper, as petitioners had delayed too long and been guilty of too gross laches to obtain the equitable relief sought.　"A person who is injured by fraud must be prompt in seeking redress, and he must prosecute his suit with diligence.　Laches and neglect are always discountenanced. Nothing can call a court of chancery into activity but conscience, good faith, and reasonable diligence, and where these are wanting, the court is passive, and does nothing.　A court of equity does not encourage stale claims, and a party may lose his right to complain of fraud by his delay."　Bisph. Eq. § 260; Smith v. Clay, Ambl. 645.　"A defense peculiar to courts of equity is that founded upon mere lapse of time and the staleness of the claim, in cases were no statute of limitations directly governs the case.　In such cases courts of equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands by refusing to interfere where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights."　Story's Eq. Jur. § 1520.　"Neither equity nor law will assist those who neglect to take care of themselves."　Marshall v. Means, 12 Ga. 61.　"He that seeks relief in the court where equity reigns, . . must knock at her doors . . without delay and laches."　Sandeford v. Lewis, 68 Ga. 484.　The plaintiff in a case of fraud will lose his remedy if he neglects to bring suit within a reasonable time after the discovery of the fraudulent act, or if he fails to use ordinary diligence to inform himself of the facts and to avail himself of the means to detect fraud.　18 Am. & Eng. Enc. L. 117.　The deed sought to be cancelled in the

present case was executed in 1856, and recorded in 1860. The grantor died in 1861; and about forty-two years afterwards, and subsequently to the death of the grantee, the petitioners brought their action. There is no excuse whatever given for the delay. It does not appear when the petitioners discovered the alleged fraud, nor is any reason given why the suit could not have been brought immediately after the death of the grantor in the deed. The plaintiffs in error rely upon *Dasher* v. *Ellis*, 102 *Ga.* 830, in which was applied the well-recognized rule that if the adverse possession upon which a claim of prescriptive title is based is founded in actual fraud, no lapse of time will bar the real owner of a right to recover. That, however, was an action of ejectment, wherein no equitable relief was sought, and where, therefore, the doctrine of laches was not applicable.

*Judgment affirmed. All the Justices concur.*